# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICHARD LEROY MORGAN,

    *Petitioner*,

vs.

MICHAEL BUDGE, *et al.*,

    *Respondents.*

3:05-cv-00661-JCM-RAM

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the court for a decision on the merits of the single exhausted claim that remains.

### *Background*

Petitioner Richard Morgan seeks to set aside his 2003 Nevada state conviction, pursuant to a jury verdict, of one count of trafficking in a controlled substance, to wit, approximately 34 grams of cocaine or a mixture containing cocaine. In the sole exhausted ground that remains for decision, ground 11, petitioner alleges that he was denied effective assistance of counsel when appellate counsel failed to argue on direct appeal that the arresting officer did not have reasonable suspicion to stop his vehicle for the headlights not being on at night because the daytime running lights were on.

The court summarizes below the evidence presented at the suppression hearing in the state district court. The court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence presented in the state courts, and it summarizes the

evidence solely as background to the issue presented in this case. No statement of fact in describing testimony constitutes a finding of fact or credibility determination by this court. Further, the court does not summarize all of the evidence presented in the state courts. The court instead summarizes the evidence pertinent to the petitioner's particular claim.

Officer Jason Stallcop testified as follows at the preliminary hearing:

At approximately 8:55 p.m. on February 21, 2001, Officer Stallcop was on patrol in a marked unit in the downtown area of Reno, Nevada, at approximately Fourth and Virginia Streets. It was dark, and there were no casinos in the immediate vicinity. While proceeding eastbound on Fourth Street between Virginia and Center Streets, he saw a Suzuki SUV heading westbound on Fourth Street with no headlights on. Officer Stallcop flashed the headlights on his police cruiser in an attempt to prompt the other driver to turn on the Suzuki vehicle's headlights. The other driver did not do so. In the officer's experience, failure to turn on headlights and failure to use turn signals were leading bases for stops culminating in arrests for driving under the influence (DUI). The officer turned his vehicle around and made a traffic stop.[1]

Richard Morgan was driving the vehicle, which belonged to another person. When Officer Stallcop told Morgan that he was pulling him over for not using his headlights, Morgan reached down and turned the headlights on. Morgan then asked Stallcop, "Are the headlights on now?" The officer told him that he would look after he completed the stop.[2]

Morgan gave Officer Stallcop a California identification card rather than a driver's license. When Officer Stallcop ran Morgan's information through the computer system, he found that Morgan's driver's license had been suspended/revoked for failure to pay fines. He further found that Morgan had a history of failure to pay fines and failure to appear. Officer Stallcop therefore proceeded to arrest Morgan rather than issue a misdemeanor citation. The officer did so per police department general orders, given Morgan's prior failures to pay fines,

---

[1] #17-8, Ex. 25, at 4-7 & 11-15.

[2] *Id.*, at 9-10, 15-16 & 21-22.

1  his prior failures to appear, the fact that Morgan then was driving without a license, and his
2  lack of a Reno address or any proof of employment.[3]

3  After Morgan stepped out of the vehicle, Officer Stallcop looked at the headlights and
4  they were on. The headlights were not on when he stopped the vehicle. Prior to the stop, the
5  officer saw no driving lights or other lights being turned on. Stallcop testified, as to forward-
6  facing lights, "At encounter of his Suzuki, I saw no white lights at all."[4]

7  During the initial intake search at the jail, officers found the cocaine upon which the
8  drug trafficking charge was based.[5]

9  Richard Morgan testified as follows in regard to the basis for the initial stop:

10  According to Morgan, he had the headlights on prior to the stop. According to Morgan,
11  the vehicle was a Suzuki Samurai Sport SUV or jeep. Based upon Morgan's review of the
12  vehicle's owner's manual at some time subsequent to the stop and arrest, it was his
13  understanding that the vehicle's daytime running lights would come on as soon as the vehicle
14  was started. He testified that he believed that the headlights on the vehicle were working,
15  based upon the police tow sheet allegedly not indicating that any lights were out, as well as
16  upon his having looked at the lights on a prior occasion.[6]

17  Morgan acknowledged on cross-examination that he had a prior felony conviction in
18  California for possession of rock cocaine.[7] The state district court examined Morgan
19  extensively regarding numerous inconsistencies in his statements to various official personnel
20  about where he lived, how long he had lived there, his recent employment history, and his

---

[3] #17-8, Ex. 25, at 7-9, 16-20 & 22-25.

[4] *Id.*, at 10-11 & 12-14.

[5] See *id.*, at 9.

[6] *Id.*, at 25-30, 32-34, 38-40 & 43; see also *id.*, at 37 (testimony by Morgan on cross-examination that he read the owner's manual "a couple of times before I even drove the car").

[7] *Id.*, at 34.

drug and alcohol usage.[8]

Defense counsel attached with the motion to suppress two sworn affidavits from an engineer with the legal office of what was described as the American Suzuki Motor Corporation along with a copy of the owner's manual for the vehicle.

Suzuki Senior Engineer Alex Butt attested that the vehicle was a 1997 Suzuki Sidekick Sport. Butt further attested that the vehicle, as standard equipment, "was equipped with 'daytime running lamps', illuminating the headlamps when the engine is started."[9]

The pertinent portion of the vehicle owner's manual stated as follows regarding use of the control lever on the outboard side of the steering column to operate the vehicle's lights:

> **Lighting Operation**
> To turn the lights on or off, twist the knob on the end of the lever. There are three positions: in the "OFF" position all lights are off; in the middle position the front parking lights, tail-lights, license plate light, and instrument lights are on, but the headlights are off; in the third position the headlights come on in addition to the other lights.[10]

The manual further stated as follows with regard to the daytime running lights:

> **Day time Running Light (D.R.L.) System**
> **(If Equipped)**
> The headlights light, but are dimmer than the low beam, when the following three conditions are <u>all</u> met. Also, the D.R.L. indicator light on the instrument panel comes on.
>
> Conditions for D.R.L. system operation:
> 1. The engine is running.
> 2. The parking brake is released.
> 3. The light switch is at either the "OFF" or the "middle" position.
>
> *NOTE:*
> *Be sure to turn the lighting switch to the third position at night or at any time of the day when driving or weather conditions require the headlights*

---

[8] #17-8, Ex. 25, at 43-52; see also *id.*, at 52-54 (redirect).

[9] #17-5, Ex. 17, Exhibits "B" & "C" thereto. Morgan had said that the vehicle was a Samurai.

[10] #17-5, Ex. 17, Exhibit "D" thereto.

-4-

> *to operate at full brightness and the taillights to be on.*[11]

After receiving the above-described testimony from Officer Stallcop and Morgan, and having reviewed the above exhibits, the state district judge asked the prosecutor, pointedly,

> . . . I have just one question for you: How could this vehicle's lights not have been on?[12]

During the discussion of the issue, the judge asked further questions of Officer Stallcop, who still would have been under oath. The judge asked Stallcop directly "did you notice whether the daylight running lights were on or was it obvious to you there were no lights, period?" Officer Stallcop testified that he was familiar with daytime running lights, as he had them on both of his vehicles. He testified without equivocation that "I didn't notice any lights at all" on the Suzuki. He acknowledged, in response to the court's questioning, that if he had seen daytime running lights, he might still have made the stop because that is not sufficient lighting for night driving. He acknowledged that he was "aware of the distinction between observing daytime running lights in the evening and no headlights in the evening," and he reaffirmed that he did not see any forward lights being on prior to the stop.[13]

Officer Stallcop further testified during the exchange with the judge that, with regard to the police tow sheet "where it says 'headlights,' the only thing we're looking for on there is not functioning of the lights, we're looking for cracked – a cracked headlight for say the tow-truck driver smashes a headlight, I wanted to make sure that it was not functioning but the headlight was intact."[14]

/ / / /

---

[11] #17-5, Ex. 17, Ex.t "D" thereto (underline emphasis added, remaining emphasis in original).

[12] #17-8, Ex. 25, at 57. See also *id.*, at 57-60 (the judge discusses in detail the operation of the vehicle's lighting system as it related to the testimony presented).

[13] #17-8, Ex. 25, at 60-61.

[14] *Id.*, at 61.

During the course of the oral argument on the motion, the judge further stated,

> No, I can't place any credence on the defendant's testimony. I don't think he's a credible witness. . . . [15]

The judge thus focused upon what the exhibits signified.[16]

The state district court thereafter denied the motion to suppress in a short written order that did not expressly articulate the court's underlying reasoning.[17]

Following the jury trial and conviction, Morgan, through counsel, pursued a direct appeal. Appellate counsel challenged the state district court's denial of the motion to suppress only on the ground that the arresting officer abused his discretion, once the stop was made, in arresting Morgan rather than issuing a misdemeanor citation.[18] Appellate counsel did not challenge the basis for the initial stop. Counsel noted that, given Officer Stallcop's testimony that he would have made the stop even if the daytime running lights were on, "it would appear that with or without them the officer had probable cause to at least make the initial stop."[19]

Morgan, acting *pro se*, thereafter sought to file, *inter alia*, a supplemental fast track statement in which he sought to challenge the basis for the initial stop. Morgan urged that the officer did not have probable cause for the stop because, pursuant to the vehicle owner's manual, the daytime running lights necessarily would have been on, rendering the stated basis for the stop, the headlights being off, pretextual.[20]

/ / / /

/ / / /

---

[15] #17-8, Ex. 25, at 58-59.

[16] *Id.*

[17] #17-9, Ex. 26.

[18] #18-5, Ex. 59a, at electronic docketing pages 8-11.

[19] *Id.*, at electronic docketing page 9, n.9.

[20] #18-5, Ex. 59c.

In a published opinion, the Supreme Court of Nevada rejected the argument presented by appellate counsel that the police officer's post-stop arrest was arbitrary or unreasonable.[21] In a footnote, the state supreme court stated that "[w]e have reviewed all documents that Morgan has submitted in proper person to the clerk of this court in this matter, and we conclude that no relief based upon these submissions is warranted."[22] The court expressly declined, however, to consider any claims or facts presented by Morgan that were not presented in the district court proceedings.[23]

On Morgan's subsequent state post-conviction petition, counsel was appointed for the petitioner.[24] Morgan, through post-conviction counsel, acknowledged that all but one of the *pro se* claims in the state petition were subject to dismissal. Thereafter, Morgan pursued only a single post-conviction claim that he had been denied effective assistance of counsel on the direct appeal because appellate counsel failed to argue that the arresting officer did not have reasonable suspicion to make the initial stop.[25]

In the state district court, petitioner maintained that "[a]t the suppression hearing, Morgan demonstrated that the vehicle he occupied had functional daytime running lights that were on when he was contacted by the officer." Morgan contended that the State therefore had failed to establish that the officer had specific articulable facts upon which to base reasonable suspicion, and that the weight of the evidence supported his claim that the stop was pretextual. He asserted that appellate counsel therefore provided ineffective assistance in failing to pursue the issue on direct appeal.[26]

The state district court rejected this claim on the following grounds:

---

[21] *See Morgan v. State*, 120 Nev. 219, 88 P.3d 837 (2004)(also filed at #18-6, Ex. 62).

[22] 120 Nev. at 222 n.9, 88 P.3d at 839 n.9.

[23] *Id.*

[24] #19-2, Ex. 80.

[25] #19-2, Ex. 82.

[26] *Id.*

> During the hearing on the motion to suppress, the Court extensively inquired about the possibility that daytime lights were running when the police officer stopped the vehicle. The officer testified that, to his recollection, the car had no headlights running. However, even if the daytime lights were on, he testified that he would still make the stop because such daytime lights were not sufficient lighting for night. Regardless of whether the daytime beams were on, the Court found that the difference between the daytime and nightime brightness of the beams would give the officer reasonable suspicion to stop Petitioner as he was violating a traffic law.
>
> The Court finds that Petitioner's appellate counsel did not offer ineffective assistance of counsel. But for appellate counsel's failure to raise this issue on appeal, there is not a reasonable probability that the outcome would have been different. The Court denied the motion to suppress as it found the police officer could point to the reasonably articulated facts as to why he stopped and eventually detained Petitioner. . . . . The Court had the discretion to weigh the evidence presented by the Petitioner and the arresting police officer.[27]

On the state post-conviction appeal, Morgan's counsel expanded the argument to include a contention that he could demonstrate ineffective assistance of appellate counsel in failing to raise the issue on direct appeal because the denial of the motion to suppress could have been overturned on the ground that the State failed to establish that the daytime running lights did not provide sufficient illumination to satisfy the requirements of N.R.S. 484.587.[28]

In an October 5, 2005 order, the Supreme Court of Nevada rejected the petitioner's claim of ineffective assistance of appellate counsel on the following grounds:

> . . . . In his post-conviction petition, Morgan argues that appellate counsel should have also challenged the propriety of the traffic stop and the district court's finding that Reno Police Officer Jason Stallcop had reasonable suspicion to stop and detain him. We disagree with Morgan's contention.
>
> . . . . .
>
> At the pretrial suppression hearing, Officer Stallcop testified that he initiated the traffic stop after observing Morgan driving a vehicle at night with the lights off. When Officer Stallcop approached Morgan on foot after the stop, he testified that --

---

[27] #19-3, Ex. 84, at 2.

[28] #19-3, Ex. 91, at 4-7.

> I told him that I was pulling him over for no headlights, and he reached down in front of me and turned the headlights on and asked me, 'Are the headlights on now?' I told him I would let him know after the stop.
>
> . . .
>
> I physically saw him turn down and grab the switch and turn it on.

Morgan contradicted the testimony of Officer Stallcop at the suppression hearing. Morgan stated that the vehicle's lights were illuminated when he was stopped. Morgan also stated the jeep was "equipped with daytime running lamps where even if I didn't turn the lights on, the headlights illuminate as soon as you turn the car on." Morgan argued that if the vehicle's lights were on, then Officer Stallcop did not have the requisite "probable cause" to initiate a traffic stop. The district court, however, stated that it could not "place any credence on [Morgan's] testimony. I don't think he's a credible witness." On October 22, 2002, the district court entered an order denying Morgan's motion to suppress.

We conclude that the district court did not err in rejecting Morgan's claim of ineffective assistance of appellate counsel. "On matters of credibility, this court will not reverse a trial court's finding absent clear error." Morgan has failed to demonstrate that the district court clearly erred in determining that Officer Stallcop's testimony was more credible than his, or that the district court's finding was not supported by substantial evidence. Further, Morgan has failed to demonstrate that the district court erred in finding that his claim did not have a reasonable probability of success on appeal.[29]

### *Governing Law*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2066 n.7(1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *See Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the

---

[29]#19-4, Ex. 96, at 2-4 (record citation and authority citation footnotes omitted).

facts in light of the evidence presented at the state court proceeding. *See Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *See Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *See Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

To the extent that the state court's factual findings are challenged intrinsically based upon evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that

-10-

>an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1), and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

On a claim of ineffective assistance of counsel, the petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the performance prong, the issue is not what counsel might have done differently but rather whether counsel's decisions were reasonable from his perspective at the time. The reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood of success on appeal. *Id.*

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

/ / / /

/ / / /

-11-

*Discussion*

The court must apply the AEDPA standard of review to the state courts' "last reasoned decision" on the claim. *See Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.)(*en banc*), *cert. denied*, ___ U.S. ___, 128 S.Ct. 532, 169 L.Ed.2d 371 (2007). In this case, the Nevada Supreme Court's October 5, 2005, order of affirmance on the state post-conviction appeal constitutes the last reasoned decision of the state courts on Morgan's claim of ineffective assistance of appellate counsel. Accordingly, it is this decision that is reviewed herein.

The Nevada Supreme Court's rejection of the claim based upon the state district court's credibility finding at the suppression hearing was neither contrary to nor an unreasonable application of *Strickland*.

Petitioner contends that the State failed to carry its burden of demonstrating that Officer Stallcop had reasonable suspicion, grounded in specific and articulable facts, prior to the stop, that Morgan was engaged in the traffic violation of driving at night without the vehicle headlights on. However, Officer Stallcop quite clearly – and emphatically – testified, repeatedly, that no forward lights were illuminated on the vehicle when he observed the vehicle prior to the stop. This testimony, if found to be credible and in the absence of an effective rebuttal, carried the State's burden of demonstrating that the officer had a reasonable suspicion based upon specific and articulable facts that a traffic violation was being committed.

Petitioner suggests that Officer Stallcop's testimony was effectively rebutted and rendered implausible by the engineer's affidavits and the vehicle owner's manual establishing that the vehicle was equipped with daytime running lights when it was sold in 1997.

These materials did not render the officer's testimony necessarily implausible for two reasons.

First, the affidavits and manual spoke to the condition of the vehicle when it was sold in 1997, approximately four years prior to the traffic stop in February 2001. Neither the affidavits nor the original manual established that the daytime running light system still was functioning properly on that particular 1997 Samurai Sidekick Sport four years later when

1   Officer Stallcop testified, unequivocally, that he saw no forward white lights illuminated on the
2   vehicle on the evening of February 21, 2001.
3         Second, the daytime running light system, as originally installed and described in the
4   vehicle owner's manual, did not operate in exactly the manner in which Morgan testified.
5   Petitioner testified that the daytime running lights came on "as soon as you turn the car on."
6   The manual, in contrast, stated that the daytime running lights came on only if "all" of three
7   conditions were met, consisting of: "1.  The engine is running.  2.  The parking brake is
8   released. [and] 3.  The light switch is at either the 'OFF' or the 'middle' position."  Thus, even
9   if the daytime running light system still was functioning fully and properly on the four-year-old
10  vehicle, no forward lights would be illuminated on the vehicle if the driver failed to turn on the
11  headlights or failed to fully release the parking brake.
12        On the evidence presented at the suppression hearing, Officer Stallcop's testimony
13  was sufficient to carry the State's burden, and Morgan failed to establish that the officer's
14  testimony was necessarily implausible. Petitioner relied exclusively on the fact that the 1997
15  vehicle originally was equipped with daytime running lights four years prior to the stop, but that
16  fact did not establish that the running lights necessarily were illuminated at the time of the
17  stop on February 21, 2001.  Petitioner cites no apposite and controlling federal or Nevada
18  state authority requiring the State, in this context, to provide further corroboration of the
19  officer's testimony that he did not observe any forward lights being illuminated on the vehicle
20  prior to the stop.[30]  The fact that – under the defense's own evidence in the manual – the

---

[30] The decisions in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), both are inapposite. *Royer* held, *inter alia*, that the State has the burden to demonstrate that a seizure pursued on the basis of a reasonable suspicion was sufficiently limited in scope and duration. 460 U.S. at 500, 103 S.Ct. at 1326. No such issue as to the scope and duration of a seizure is presented here. *Dunaway* noted, *inter alia*, that the State has the burden of establishing that a confession was not obtained by exploitation of an illegal arrest. No such issue as to the admissibility of a confession is presented here. Neither *Royer* nor *Dunaway* establish that the State has the burden in this context to not only present testimony by its officer that no forward lights were illuminated but also to present particularized mechanical or other evidence regarding the specifics of operating the vehicle to buttress the officer's testimony that he in fact saw what he testified that he saw. In the present case, it was petitioner who brought up generalized mechanical and operational information

(continued...)

1  daytime running lights would not be illuminated if the parking brake had not been released --
2  in and of itself -- was sufficient to negate the defense suggestion that the mere existence of
3  the daytime running light system in the vehicle when sold necessarily rebutted Officer
4  Stallcop's testimony.

5  Morgan urges in the reply in this matter -- as state post-conviction counsel similarly
6  urged for the first time on the state post-conviction appeal -- that the State failed to establish
7  that the daytime running lights did not provide sufficient illumination to satisfy the
8  requirements of N.R.S. 484.587. This argument, however, goes only to the alternative basis
9  for decision in the state district court's post-conviction decision, that the stop would have been
10 permissible even if the daytime running lights had been on because the illumination from the
11 lights was insufficient for nighttime driving. Review under the AEDPA is directed to the last-
12 reasoned decision in the state courts, which in this case is the Nevada Supreme Court's
13 October 5, 2005 order of affirmance.  It does not appear that the Nevada Supreme Court's
14 last reasoned decision relied upon the state district court's alternative basis for decision on
15 state post-conviction review that the illumination of the daytime running lights in any event
16 would have been insufficient. The state high court instead based its decision upon the
17 credibility determination made by the state district court at the suppression hearing that
18 Morgan's testimony was not credible. The petitioner's argument regarding the illumination
19 level of the daytime running lights – which were not on according to Officer Stallcop's
20 testimony – thus begs the question vis-à-vis the basis for the Nevada Supreme Court's
21 decision. If, as Officer Stallcop testified, no forward lights were on, then the illumination level
22 of the daytime running lights clearly is not material.[31]

---

[30](...continued)
regarding the type of vehicle in an effort to demonstrate that the officer could not have seen what he testified
to seeing. As discussed in the text, the petitioner's evidence failed to establish that the officer could not have
seen what he testified to having seen. The officer's testimony, if believed by the trial court over Morgan's
testimony, accordingly was fully sufficient to carry the State's burden at the suppression hearing.

[31] This court further notes that the vehicle owner's manual indicated that the daytime running lights
(continued...)

1	Accordingly, petitioner has failed to demonstrate a reasonable probability that the
2	outcome of the appeal would have been different if appellate counsel had pursued the issue
3	on direct appeal.  The Nevada Supreme Court's holding that petitioner was not denied
4	effective assistance of appellate counsel therefore was neither contrary to nor an
5	unreasonable application of *Strickland*.

6	The sole remaining ground in the petition, ground 11, therefore does not provide a
7	basis for federal habeas relief.[32]

8	IT THEREFORE IS ORDERED that the petition is DENIED on the merits and that this
9	action shall be DISMISSED with prejudice.

10	The clerk of court shall enter final judgment accordingly, in favor of respondents and
11	against petitioner, dismissing this action with prejudice.

12	DATED:   March 9, 2009.

_____
JAMES C. MAHAN
United States District Judge

---

[31](...continued)
were not to be used at night or at any other time when full illumination was required.  Petitioner has not come forward with any apposite controlling authority establishing that the State's burden required that it affirmatively demonstrate at the time of the suppression hearing – in response to an argument that was not made at that time and that instead was made years later on state post-conviction review – that the daytime running lights provided sufficient illumination, despite the clear indication in the vehicles owner's manual that the running lights were not to be used at night.

[32] The court notes that the exhausted claim is one of ineffective assistance of appellate rather than trial counsel.  The underlying substantive Fourth Amendment claims in Grounds 1 and 11 have been dismissed as noncognizable under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). #9, at 1-2.  The ineffective assistance claims that petitioner sought to present *pro se* on direct appeal were not fairly presented to and considered by the Supreme Court of Nevada, because they had not been presented to the state district court.  *See Morgan v. State*,  120 Nev. at 222 n.9, 88 P.3d at 839 n.9.  Further, the ineffective assistance claims were not cognizable on direct appeal under Nevada state law.  The only ineffective assistance claim that was exhausted completely through to the state supreme court  was the claim of ineffective assistance of appellate counsel considered herein. See text, *supra*, at 7-9.